**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KIM ANDERSON,**

    **Petitioner,**

    **v.**

**NORMAN ROBINSON, WARDEN,**

    **Respondent.**

**CASE NO. 2:12-CV-130
JUDGE SMITH
MAGISTRATE JUDGE KING**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Doc. No. 3, Respondent's *Motion to Dismiss*, Doc. No. 8, Petitioner's *Motion Contra*, Doc. No. 9, and the exhibits of the parties. For the following reasons, Petitioner's motions to stay, Doc. Nos. 2, 5, are **DENIED.**

The Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss* be **GRANTED.** Alternatively, Petitioner may choose to delete and withdraw his unexhausted habeas corpus claims two and four and proceed on his remaining claims by notifying the Court of this intention within FOURTEEN (14) DAYS of the date of this *Report and Recommendation*.

**FACTS and PROCEDURAL HISTORY**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> In common pleas case No. 07CR06-4563, the Franklin County Grand Jury indicted appellant on one count of engaging in a pattern of corrupt activity, one count of theft, five counts of forgery, five counts of money laundering, one count of identity fraud, and five counts of securing writings by deception. In common pleas case No. 07CR06-4568, the grand jury indicted appellant on one count each of forgery, identity fraud, and securing writings by deception. Appellant pleaded not guilty, and a jury trial ensued.

At trial, plaintiff-appellee, the state of Ohio ("appellee"), established the following. Appellant participated in a mortgage fraud scheme that involved six properties and that defrauded mortgage lenders of over $1 million. Appellant never purported to be a buyer, seller or real estate agent during any of the transactions. Instead, appellant held himself out as a "facilitator" in the transactions. (Vol. X Tr. 1764.) Appellant paid others to portray straw buyers in pre-arranged property transactions. Appellant prepared falsified loan applications for the buyers, and presented falsified documents to mortgage brokers. Some of the buyers used stolen identities. Appellant kept $180,476 .55 in proceeds from the mortgages in the five real estate transactions in case No. 07CR06-4563.

One buyer, Deborah Steele Bosley, testified that she met defense counsel through appellant. Taisean Glover, appellant's co-defendant, testified that defense counsel represented him on two separate occasions for drunk driving and driving under license suspension. Defense counsel's name appeared in some of the payment records in the real estate transactions because counsel had represented appellant previously. The trial court instructed the jury that the documents were being used only to show that appellant received economic benefit from the real estate transactions. Defense counsel signed documents in a real estate transaction on behalf of a seller after the seller provided him power of attorney. The court instructed the jury that this evidence was being used only to show that the "documentation was executed." (Vol. III Tr. 298.) Defense counsel agreed to the court providing these instructions; defense counsel indicated that the instructions would resolve any potential problem.

Cornelius Mitchell acted as a straw buyer where he used the stolen identity of Jay Koblenz. The prosecution did not include Mitchell on the written witness list it provided the defense in discovery. During voir dire, the prosecution mentioned Mitchell as a possible witness. At opening statement, defense counsel mentioned that someone used Koblenz's stolen identity during one property transaction. Defense counsel argued, "[t]he question is who is this individual and whether [appellant] knew that he was not, in fact, Jay Koblenz." (Vol. III Tr. 294.) Subsequently, the prosecution informed defense counsel that Mitchell would testify. Defense counsel moved for a mistrial on counts related to Mitchell's participation. Defense counsel argued that Mitchell was a "surprise" witness and that he was not "ready to take on this witness." (Vol. IX Tr. 1386-87.) Defense counsel expressed concern about "the spill-over effect" of Mitchell's testimony on non-related counts. (Vol. IX Tr. 1386.)

The prosecution conceded that Mitchell was not "on a written witness list." (Vol. IX Tr. 1388.) The prosecution explained that it did not determine Mitchell's identity and role in the mortgage fraud scheme until two or three days before the trial started. The prosecution noted that it mentioned Mitchell as a potential witness during voir dire on September 22, 2008. The prosecution indicated that Mitchell "was not in custody to be interviewed" until Friday, September 26, 2008. (Vol. IX Tr. 1387.) The prosecution said that on the following Monday, September 29, 2008, it informed defense counsel that Mitchell might testify. The prosecution said, "[w]e still had not determined if we were going to call him until we could speak with him again [on the] morning" of Wednesday, October 1, 2008. (Vol. IX Tr. 1387.) The trial court denied the mistrial motion.

Mitchell testified the next day. Before Mitchell testified, defense counsel confirmed that he received Mitchell's video- and audio-taped statements and Mitchell's criminal record. Defense counsel said that he was "[r]eady to go." (Vol. X Tr. 1561.) Mitchell testified that he had known appellant for 44 years and that he worked with appellant in the mortgage fraud scheme as a straw buyer who assumed Koblenz's identity. Mitchell testified that he was indicted on crimes related to the mortgage fraud and separate non-related criminal conduct. Mitchell testified that plea negotiations have yielded no agreements, but "conversations" with the prosecution may resume. (Vol. X Tr. 1584.) On cross-examination, Mitchell admitted to having previous convictions for forgery and theft.

During closing argument, defense counsel argued that Mitchell "is the only evidence that was presented that [appellant] knew that Jay Koblenz was not Jay Koblenz." (Vol. X Tr. 1768.) Defense counsel said that the jury needed to decide whether Mitchell truthfully testified. Defense counsel told the jury to be suspicious of Mitchell's testimony because he was charged as an accomplice in the mortgage fraud.

The court granted the prosecution's motion to dismiss the securing writings by deception counts in both cases. The jury found appellant guilty of the remaining counts in case No. 07CR06-4563. The jury was unable to reach a verdict on the remaining counts in case No. 07CR06-4568, and the court dismissed those counts. The court sentenced appellant to concurrent and consecutive prison terms for a total of 15 years imprisonment. At the conclusion of the trial, the court noted that defense counsel "conducted a spirited defense on [appellant's] behalf." (Vol. XII Tr. 43.) Appellant requested that the

>trial court appoint defense counsel for appeal.

*State v. Anderson*, No. 08AP-1071, 2009 WL 4809869, at *1-2 (Ohio App. 10th Dist. Dec. 15, 2009).

Through counsel, Petitioner raised the following assignments of error:

>1. The trial court erred by imposing consecutive sentences without making the required statutory findings pursuant to R.C. 2929.14(E)(4).
>
>2. There was insufficient evidence to support a guilty verdict for the offense of theft as a felony of the first degree as the value of property and services stolen did not exceed one million dollars, as required by R.C. 2913.02(B)(2).
>
>3. The trial court erred in permitting the state to introduce a surprise witness during the course of trial who was not listed in pre-trial discovery and who dramatically undermined Appellant's proffered defense. This denied Appellant due process under the state and federal Constitutions.
>
>4. The trial court erred, in violation of Ohio's allied offense statute as set forth in R.C. 2941.25, in imposing consecutive terms of incarceration for the offenses of theft and forgery, arising from the same transaction.
>
>5. Defense counsel's implication in the charges filed against his client and his involvement with the co-defendant denied Appellant due process and a fair trial as guaranteed under the state and federal Constitutions.

*Id*. at *3. On December 15, 2009, the appellate court affirmed the judgment of the trial court. *Id.* On May 5, 2010, the Ohio Supreme Court accepted the appeal, holding the case pending its decision in *State v. Hodge*. *State v. Anderson*, 125 Ohio St.3d 1411 (2010). On January 25, 2011, the Ohio Supreme Court affirmed the judgment of the state appellate court. *In re Cases Held for Decision in State v. Hodge*, 128 Ohio St.3d 234 (2011).

Petitioner also pursued post conviction relief.

>On July 27, 2010, defendant filed a motion to vacate a void judgment.

4

Relying on cases that addressed a void sentence in the context of post-release control, defendant contended his conviction was void because (1) the court erroneously convicted him of first-degree felony theft when the evidence established defendant exerted control over less than $181,000; (2) the court allowed a violation of Crim.R. 16; (3) the prosecution advised the trial court that defendant's own attorney was implicated in the same transaction for which defendant was being tried; (4) prior to imposing consecutive terms of incarceration for defendant's felony convictions, the trial court failed to overcome the statutory presumption favoring concurrent sentences under R.C. 2929.14(E)(4); (5) none of the suits were instigated through the alleged victims' filing charging instruments; and (6) the trial court improperly modified its judgment following appeal.

The state responded with a memorandum that asserted the doctrines of res judicata and law of the case barred defendant's arguments, as they raise the same issues presented in defendant's direct appeal. The state further contended the motion was untimely under R.C. 2953.21. Accordingly, the state requested that the trial court deny defendant's motion. Following defendant's reply, the trial court issued a decision and entry denying defendant's motion. The court noted that each of the grounds defendant posited, with the exception of defendant's contentions regarding the charging instruments and the modified entry, were raised in defendant's appeal to this court. The trial court thus determined defendant could not re-litigate those issues in the common pleas court after the court of appeals resolved them in defendant's direct appeal.

As to defendant's argument regarding the charging instruments, the trial court determined not only that res judicata barred the argument since it could have been raised during the direct appeal, but also that the argument lacked merit. Lastly, addressing defendant's contention that the court lacked jurisdiction to change the sentencing entry after defendant filed his notice of appeal, the court pointed out that the nunc pro tunc entry diverged from the original sentencing entry only to effect corrections that did not disturb the substance of defendant's sentence. The court concluded that, in any event, defendant suffered no prejudice since his 15–year sentence remained the same.

    \*    \*    \*    \*

Defendant's single assignment of error on appeal asserts the trial court erred in denying his motion to vacate his void sentence.

*State v. Anderson*, No. 11AP-236, 2011 WL 6834992, at *1-2 (Ohio App. 10th Dist. Dec. 22, 2011). On December 22, 2011, the appellate court affirmed the judgment of the trial court. *Id.* Petitioner apparently never filed an appeal from that decision to the Ohio Supreme Court.

On August 17, 2010, Petitioner filed a delayed application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). He asserted that he had been denied the effective assistance of appellate counsel based on his attorney's failure to raise the following issues on direct appeal:

    1. Prosecutorial misconduct.

    2. Misconduct of prosecution witness Christine Spencer.

    3. Trial court's refusal to grant a motion for change of venue.

    4. Improper jury questionnaires regarding mortgage crisis, destroyed prior to review by the defense.

*Exhibit 21* to *Motion to Dismiss*. On January 11, 2011, the appellate court denied Petitioner's Rule 26(B) application, reasoning that Petitioner had failed to establish good cause for the untimely filing. *Exhibit 24* to *Motion to Dismiss*. Petitioner apparently never filed an appeal to the Ohio Supreme Court from that decision.

On January 4, 2011, Petitioner filed a motion for a new trial based on newly discovered evidence which, he alleged, established prosecutorial misconduct, misconduct of state witnesses and the ineffective assistance of his trial counsel. *Exhibit 37* to *Motion to Dismiss*. On December 6, 2011, the trial court denied Petitioner's motion for a new trial as untimely. *Exhibit 45* to *Motion to Dismiss*. Petitioner filed a timely appeal alleging that: the trial court abused its discretion in rejecting his motion for a new trial as untimely; the trial court should have granted his motion for a new trial based on prosecutorial misconduct, including suppression of favorable evidence and suborning perjury by prosecution witnesses; there was insufficient evidence to support his

convictions; and the denial of his motion based on the misconduct of a prosecution witness constituted a miscarriage of justice. *Exhibit 47a* to *Motion to Dismiss.* This appeal apparently remains pending in the state trial court.

Petitioner also filed a series of post trial motions. On April 27, 2011, Petitioner filed a motion for resentencing, alleging that he had been improperly sentenced on counts ten and sixteen of the indictment. *Exhibit 47b* to *Motion to Dismiss*. On June 30, 2011, Petitioner filed a motion requesting the trial court to find the prosecutor Scott Smith and prosecution witness Christine Spencer to be in contempt of court for providing perjured testimony at his trial. *Exhibit 50* to *Motion to Dismiss.* That motion was denied by the trial court on March 5, 2012. *Exhibit 51* to *Motion to Dismiss*. On August 25, 2011, Petitioner filed a motion to vacate the order of restitution. *Exhibit 52* to *Motion to Dismiss*. That motion was denied by the trial court on September 7, 2011. *Exhibit 55* to *Motion to Dismiss*. On January 6, 2012, Petitioner filed a motion to vacate his conviction based on prosecutorial misconduct. *Exhibit 56* to *Motion to Dismiss*. Additionally, he filed a motion for relief from judgment pursuant to Rule 60(b) of the Ohio Rules of Civil Procedure. *Exhibit 57* to *Motion to Dismiss*. On March 23, 2012, Petitioner filed an application to disqualify the trial judge based on judicial bias. *Exhibit 60* to *Motion to Dismiss*. On April 3, 2012, the Ohio Supreme Court denied that motion. *Exhibit 61* to *Motion to Dismiss*. The remainder of Petitioner's post-trial motions apparently remain pending in the state trial court.

On February 10, 2012, Petitioner filed his *pro se* federal habeas corpus petition pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The value of property involved in a theft offense arising from mortgage fraud is the actual value of goods and services over which

> the offender obtained or exerted control and not the full value of property involved in the real estate transaction. R.C. 2913.02(B)(2).
>
> In Count Two which charged appellant with felony theft in the 1st degree based on the amount of property involved as opposed to the value of the stolen property or service, the State pointed to the value of the total estate involved in those sales as being in excess of $1,000.000 which is in violation of O.R.C. 2913.02(B)(2) and appellant's 14th Amendment right under the U.S. Constitution and Article 1, Section 16 of the Ohio Constitution and Section 1 and 19 of Article 1.
>
> 2. Prosecutorial misconduct by knowingly using false testimony of its key witness.
>
> 3. Trial court committed reversible error when it created its own jury questionnaire.
>
> 4. Misconduct of a state witness name[d] Christine Spencer.

Respondent moves to dismiss this action based on Petitioner's failure to exhaust his state court remedies. Petitioner seeks a stay of proceedings pending exhaustion of state court remedies as to all his claims.

## EXHAUSTION

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir.1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990). Where alternative state remedies are available to consider the same claim, exhaustion of one of these remedies is all that is necessary.

As noted by Respondent, claims two and four remain unexhausted. Petitioner raised these claims in his motion for a new trial, and his appeal from the denial of that motion remains pending in the state appellate court.

In *Rhines v. Weber*, 544 U.S. 269 (2005), the United States Supreme Court held that

> a stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. *Cf.* 28 U.S.C. § 2254(b) (2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

*Id.* at 277.

The record does not reflect either good cause for Petitioner's failure to exhaust his state court remedies or that his claims are potentially meritorious. Petitioner has failed, without good cause, to pursue an application to reopen his appeal in the state appellate court. *Cf. Pace v. DiGuglielmo*, 544 U.S. 408 (2005) (A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court). *See Riner v. Crawford*, 415 F.Supp.2d 1207, 1209–11 (D. Nev. 2006) (discussing the various standards adopted by courts to determine what may constitute good cause within the meaning of *Rhines* ). Moreover, the state trial court rejected Petitioner's motion for a new trial as untimely, finding that the evidence referred to by Petitioner was not actually newly discovered and that, in any event, Petitioner had waited 134 days after obtaining the evidence before filing his motion for a new trial. *See Exhibit 45* to *Motion to Dismiss*. Furthermore, the state trial court noted that Petitioner's claim of prosecutorial misconduct, which is based on an alleged conspiracy between the prosecution and

another entity, lacked merit. Finally, Petitioner's claim of insufficiency of the evidence was not appropriately addressed in a motion for a new trial. *See generally Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir.2005) (claims are "plainly meritless" for purposes of deciding whether to grant a stay of proceedings where the petitioner is procedurally barred from raising his unexhausted claims in the state courts). For all these reasons, Petitioner's motions to stay, Doc. Nos. 2, 5, are **DENIED.**

The Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss,* Doc. No. 8, be **GRANTED** and that the action be dismissed for failure to exhaust unless, within fourteen (14) days, Petitioner withdraws his unexhausted habeas corpus claims two and four and agrees to proceed on only his remaining claims.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court

adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                                    *s/ Norah McCann King*
                                                    Norah McCann King
                                                    United States Magistrate Judge

May 24, 2012